HARPER & AMMONS, plaintiffs in error, *vs.* A. A. LEMON, executor, etc., defendant in error.

(Held up because of military order.)

When a father authorized a merchant to let his daughter, who was a minor, have whatever she wanted out of his store, and the merchant permitted her to purchase various articles, such as were usually kept for sale by the merchant, the father is liable for the goods purchased, though they be neither necessaries nor such goods only as a prudent father would furnish a minor child.

*Assumpsit.* Motion for new trial. Decided by Judge SPEER. Henry Superior Court. October Term, 1867.

Rhoderick T. Harper & Wm. B. Ammons, merchants and partners, under the style of Harper & Ammons, brought assumpsit against Alexander Lemon, upon an open account for goods sold and delivered to his daughter, between the 1st

of March, 1860, and 8th of October, 1861, amounting to $583 45. One count averred that they were furnished to her as necessaries, and another that they were furnished by special request of her father. The account was as long as the moral law, and embraced almost everything which a school-girl with *carte blanche* would buy. She very frequently bought snuff, indulged pretty freely in candy, and the like, bought quite a number of cheap gold rings, etc. In the account were three or four items, amounting, in the aggregate, to about $10 00, stated to be "per order," and six items for cash loaned and cash paid for her, amounting, in the aggregate, to $6 95.

Alexander Lemon died, and Abel Lemon, his executor, was made defendant.

Upon the trial, the plaintiff relied only on the second count. WADE HARPER, being on the witness-stand, proved the plaintiffs' books of original entry; that the account sued on was in the hand-writing of Julius Askew, deceased; that before that, he had testified in this cause, that he copied the account; that he posted the books, but did not sell the articles; he had compared the day-book with the account sued on; those marked, in the account, he sold and delivered to the said daughter; the others were in the hand-writing of his brother, one of the plaintiffs, except one, which was in the hand-writing of Askew. (What he had marked does not appear.) The charges for the goods, he said, were reasonable, and her father had said, in the Spring or Summer of 1860, to him, to sell her any goods she wanted. He said he only knew the items and prices from the books. He was the clerk of plaintiffs from January, 1860, to July, 1861. The daughter was a school-girl, sixteen or seventeen years old. The cash items were advanced by him. He thought that some of the items were not gotten by the daughter, but upon orders, sent by negroes, by Alexander Lemon.

ALLEN TURNER testified that, in the Spring of 1860, he and Alexander Lemon were in plaintiffs' store, leaning on a pile of blankets, and he spoke to him about his daughter trading with plaintiffs, and Lemon told him that he had told

Thomas Harper, one of the plaintiffs, to let his daughter have anything she wanted. The girl had married before this trial, and testified that she bought the goods, that sometimes her father gave her permission to buy, and sometimes she did not ask him, that he gave her money when she asked him for it, and sometimes directed her to go to the store and get on a credit what she wanted. The plaintiffs proved that they kept correct books, introduced the books, and closed.

On the part of defendant, a witness testified that he saw Alexander Lemon meet Harper, in the corner store, and say to Harper that he had frequently told him not to sell his daughter goods, as she was not a judge of goods. Harper said he would take it back, it was a small bundle, and he did take it back; he did not know when it was, but it was after 1856, and he thought about the beginning of the war; he did not know where Harper was doing business then. It was shewn that in 1860 and 1861 plaintiffs did not do business in the corner store.

There was other testimony as to Alexander Lemon's pecuniary ability, showing that he was worth from $20,000 00 to $30,000 00, and as to his habit of furnishing his family proper supplies, etc., but, as the first count in the declaration was abandoned on the trial, it is not material here.

The Court charged the jury that they must first be satisfied, from the evidence, that the items in the account were correct before they need inquire as to Alexander Lemon's liability. He told them, if the account was correct as to items and values, that this promise to pay need not be in writing, because, if Alexander Lemon was liable, it was by reason of his making his daughter his agent to purchase the goods; that if the father fails to supply necessaries, his daughter may buy them, and the law will imply a contract by him to pay for them, but by express agreement, the authority from the father may be greatly enlarged, and if Alexander Lemon authorized plaintiffs, or either of them, or their clerk, to let his daughter have from their store whatever she wanted, he made her his agent to contract and he is bound by her acts, though they may exceed what is actually necessary for her comfort, and if

the evidence showed such general authority was given, the presumption of law is, it continued until revoked,.and plaintiffs or their agents had notice of the revocation. He further charged that knowledge by a father that his daughter was purchasing goods, and his failure 'to stop it, would not bind him for everything bought, but only for reasonable necessaries, suitable to her circumstances and condition in life ; that under the authority to give her what she wanted, it was permissible to make such small advances of cash as are common for merchants to make to their customers.

He was requested to charge, that there could be no recovery for the items charged " per order," without producing the orders. He refused so to charge, telling the jury that the order was the best evidence, but as there was no objection made at the time, they could say whether the proof of those items was satisfactory. He was also requested to charge, that if the daughter's agency was limited by the father, in his notice to plaintiff as to quantity and price of the goods, and as to the time when the permission ceased, then plaintiff could not . exceed the authority, nor the time limited, nor recover for any unreasonable quantity purchased. The Court told the jury he would not so charge, because there was no evidence to support such a charge. The jury found for the full amount of the account, with interest and costs.

Defendant's attorney moved for a new trial, upon the grounds that the Court erred :

1st. In allowing the clerk to testify, by referring to the books of original entry, he saying that he did not recollect the sale or delivery of the goods, except by the entries in his handwriting in said books.

2nd. In allowing the books read to the jury, without first proving, by the clerk, his knowledge of the account " outside of the books."

3d. In allowing the books used as evidence, to charge said defendant, when there was a clerk by whom said account was required to be proven, he being present in Court, and shewn to have been in the plaintiffs' employment when said account was contracted.

4th. In refusing a non-suit because it was not shewn that said goods were necessaries, and that the minor's father did supply her.   (No non-suit appears to have been moved for.)

5th. Because plaintiffs had proved no promise to answer for this debt binding on defendant.

6th. Because of the vagueness and uncertainty of the amount for which defendant was liable, if at all.

7th. Because the charge is contrary to law, and without law to support it.

8th. Because the Court failed to charge that the conduct or silent admission in reference to the liability of the defendant, or failure to assert the authority of plaintiffs to sell the goods to defendant's daughter, when such authority was questioned, and the effect of such conduct and failure of denial was evidence that the jury might consider in determining the truth of said authority, defendant's attorney having called the attention of the Court to the same in his argument to the jury.

And 9th. The verdict was contrary to law, the charge of the Court, the evidence, and the weight of evidence.

The Court granted a new trial, upon the ground that his charge was wrong, he believing that an authority to let her have whatever she wanted, did not authorize plaintiffs to let the daughter have things extravagant or unreasonable.

JNO. J. FLOYD, G. M. NOLAN, for plaintiffs in error.

W. W. CLARK for defendant in error.

MCCAY, J.

The motion for a new trial was granted in the Court below, on the ground that the Court had erred in its charge to the jury in this: "That if Lemon authorized plaintiff, or his clerks, to let his daughter have from their store whatever she wanted, he made her his agent to contract, and he is bound by her acts, though she exceed what is actually necessary for her comfort."

We think this charge, under the facts of this case, was

right.   The defendants were not the keepers of Mr. Lemon's conscience.   He had, very unwisely, it is true, placed that in the hands of his daughter.   Many parents do this, in spite of the wise counsels of wise men, and doubtless will continue to do it.

The law deals with facts, and if Mr. Lemon, either through folly or for a reason which at the time was an overpowering one, chose to give this young lady a free rein, it is for himself, and not the defendants, to bear the consequences.   The articles were such as the defendant usually kept in his store, and such as, unfortunately, many parents permit their children to buy; and there is not, in our opinion, an item on the account that she might not, under such authority, have bought.

It was contended in argument that though the Court might have erred in granting a new trial on this ground, yet there were other grounds in the motion, and that the new trial ought to have been allowed on these grounds.

There is in the record no assignment of error in the overruling of these grounds by the Court, and this bill of exceptions must be confined to the points made in it.   Code, section 4192.

Judgment reversed.